IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CC CARE, LLC, et al.,                )
                                     )
            Plaintiffs,              )
                                     )
       v.                            )   Case No. 16 C 5765
                                     )
FELICIA F. NORWOOD, not individually, but )
solely in her capacity as Director of the ILLINOIS )
DEPARTMENT OF HEALTHCARE AND          )
FAMILY SERVICES,                     )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

Ten operators of long-term care facilities ("nursing homes" in every-day parlance) in Illinois (collectively "Operators") brought this action against Felicia F. Norwood ("Norwood") in her capacity as Director of the Illinois Department of Healthcare and Family Services ("Department"), seeking injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 ("Section 1983"). Operators contend that Norwood and Department failed to comply with various state and federal statutes, including 42 U.S.C. § 1396a(a)(13)(A),[1] applicable to those nursing homes when Operators acquired their ownership.

Norwood responded to Operators' Complaint with a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss, which has now been fully briefed. For the reasons stated in this opinion, this Court denies Norwood's motion (Dkt. No. 16).

---

[1] All further references to subparts of 42 U.S.C. § 1396a(a) will simply take the form "Section 1396a(a) --," omitting the prefatory "42 U.S.C. §."

**Standard of Review**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the District Court to accept as true all of Operators' well-pleaded factual allegations and to view those allegations in the light most reasonably favorable to them as the nonmovants (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions with what this Court regularly refers to as the "Twombly-Iqbal canon," a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks and brackets omitted)). As McCauley, id. (internal quotation marks again omitted) went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together."

Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for it "may elaborate on [its] factual allegations so long as the new elaborations

are consistent with the pleadings" (id.). This opinion evaluates Norwood's motion in accordance with those principles.

**Factual Background**

On June 27, 2012 each of the Operators took ownership of a separate nursing home immediately following the purchase of those nursing homes by ten real estate companies (Complaint ¶¶ 28-37, 44-53). Each sale involved a complete turnover of control at a market value price (Complaint ¶ 42). On acquiring the nursing homes Operators obtained new operating licenses from the Illinois State Board of Health, with new Medicare numbers and providers (Complaint ¶¶ 59-62). Operators filed reports with the Department from July 1 through December 31, 2012 (Complaint ¶ 64).

Under the guidance of Illinois statutes, the Department distributes facility-specific per diem reimbursements for Medicaid-related costs (Complaint ¶¶ 69-93). Operators allege that despite their complete change in ownership, the Department and Norwood have refused to re-examine the per diem, reimbursing Operators at the prior rates that were set in 2004 (Complaint ¶ 98). Operators aver that the Department never provided a "public process" where it explained why it kept the rates the same despite that change in ownership (Complaint ¶ 100).

Operators are asking for declaratory and injunctive relief under Section 1983 for violations of Section 1396a(a)(13)(A), the federal law that dictates the need for a public process involving opportunities to review and comment on the determination of rates of Medicaid payments (Complaint ¶¶ 105-06). What follows in the text treats in the first instance with the availability of Section 1983 to address that claim for relief, then follows with a brief treatment of Norwood's other unpersuasive contentions.

## Ability To Invoke Section 1983

Norwood's main argument is that Section 1396a(a)(13)(A) does not violate any federal rights of Operators, who therefore cannot bring a case under Section 1983. Analysis of that contention properly begins with a look at some history of the relationship between Sections 1396a(a) and 1983.

Section 1983 is in place to protect individuals from the deprivation of any legal or constitutional rights "under color of law" -- that is, by governmental action. As for Section 1396a(a), it was significantly expanded in 1973, and then in 1980 Congress passed the Boren Amendment, which requires a reasonably calculated reimbursement to Medicaid providers. Those two statutes were linked in 1990 when Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990) held that the obligations imposed by the Boren Amendment in Section 1396a(a)(13) are enforceable by Medicaid providers under Section 1983.

Although the Boren Amendment was repealed in 1997, Section 1396a(a)(13) continued to be good law, but with some wording changes.[2] In the following five years the Supreme Court decided two relevant cases clarifying that a plaintiff may bring a lawsuit under Section 1983 only for the violation of unambiguously conferred federal rights, not a violation of federal law alone (Blessing v. Freestone, 520 U.S. 329 (1997); Gonzaga Univ. v. Doe, 536 U.S. 273 (2002)).

Though Wilder was never explicitly overturned by Congress or the Supreme Court, an open question was left as to whether Section 1983 applied to Section 1396a(a)(13) after the repeal of the Boren Amendment and the explanations of Section 1983 jurisprudence in Blessing

---

[2] In particular, the requirement that a state must pay "reasonable and adequate" rates was replaced with language requiring a state to provide a "public process" by which rates are determined (see Children's Seashore House v. Waldman, 197 F.3d 654, 656 (3d Cir. 1999)).

and Gonzaga. Before the analysis here proceeds a step further, it must be emphasized that this Court does not write on a clean slate in that respect. In Bontrager v. Indiana Family & Soc. Servs. Admin., 697 F.3d 604, 607 (7th Cir. 2012) the state defendants argued, as do defendant here, that the Blessing-Gonzaga duo had sapped Wilder of its vitality. But our Court of Appeals made short shrift of that contention, stating (id.):

> Although we have acknowledged that Gonzaga "may have taken a new analytical approach," Bertrand ex rel. Bertrand v. Maram, 495 F.3d 452, 456 (7th Cir. 2007), Wilder has not been overruled, id.; cf. State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) ("[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents.").

Just as our Court of Appeals has thus followed the command of what it deems basic jurisprudential principles, so too this Court is bound to follow that same command (indeed, as an a fortiori matter) -- so it too will treat Wilder as alive and well for purposes of this case.

That might well obviate the need to explore the subject in greater depth, but as the ensuing discussion demonstrates, other analytical paths also lead to the same destination. Importantly, in both Bontrager, id. at 607 and Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health, 699 F.3d 962, 973 (7th Cir. 2012) our Court of Appeals employed a three-part test to determine whether a Section 1983 action was allowed under the subparts of Section 1396a(a) involved in those cases.

Although Bontrager and Planned Parenthood dealt with different subparts of the statute implicated here, the logic of those decisions also calls for allowing a Section 1983 action to proceed under Section 1396a(a)(13). Bontrager, 697 F.3d at 607 (quoting Blessing, 520 U.S. at 340-41) held that Section 1396a(a)(10) (the provision that focused on providing all Medicaid recipients with equal access to care) created an enforceable private right of action in these terms:

- 5 -

> Generally, we consider three factors to determine if a statute creates an enforceable right: (1) whether Congress intended the provision to benefit the plaintiff, as evidenced by "rights-creating" language;[3] (2) whether the right is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the States, such that the provision is "couched in mandatory, rather than precatory, terms."

Those three factors apply here with equal force to create an enforceable right, with the clear and unambiguous right to a public process written into Section 1396a(a)(13). Indeed, the Blessing-Gonzaga three-part test was adopted from Wilder itself, which used it to confirm a private right of action under Section 1396a(a)(13).

In sum, this Court must and does reject Norwood's effort to disqualify this case in Section 1983 terms. In light of our own Court of Appeals' approach to the subject, there is no need to address the conflicting decisions from other circuits that the competing litigants in this case seek to call to their aid.

## Norwood's Other Arguments

With the Section 1983 issues having been thoroughly vetted and resolved, this opinion turns in the interest of completeness to a grab bag of other arguments proffered by Norwood. As will be seen, none calls for much discussion.

Several of those arguments attempt to advance the erroneous proposition that Operators are bringing this action under state law rather than to federal law. Not so -- although Illinois statutes do lay out specifics for how Section 1396a(a)(13) should be implemented, the concepts of a "public process" and justified published rates derive solely from that federal statute. It is those requirements that provide the foundation for Operators' lawsuit -- plainly asserting a

---

[3] [Footnote by this Court] On that score, see Gonzaga, 536 U.S. at 284.

federal claim for relief. And that in turn sounds the death knell for Norwood's contentions that there is no federal question jurisdiction, no Section 1983 standing and no Eleventh Amendment standing on the premise that the Complaint derives from state statutes.

Norwood also presents other Eleventh-Amendment-grounded arguments that are deep-sixed by the firmly-established and century-old doctrine established by <u>Ex parte Young</u>, 209 U.S. 123 (1908). Not only are Operators suing a state official in her official capacity, a uniformly-applied exception to any Eleventh Amendment invocation, but Operators' well-pleaded factual allegations provide an ample claim of an ongoing injury.

Nor does Operators' prayer for injunctive and declaratory relief necessarily embrace damages that might render their claim suspect in Eleventh Amendment terms. If such a possibility were to arise at a future date, it could be dealt with at that time.

Lastly, Norwood's swan-song assertion as to a claimed need to exhaust all other remedies may be the weakest of all (although this opinion's analysis to this point has demonstrated stiff competition for that dubious distinction), relying as it does on dicta from a concurrence in a plurality opinion (<u>Armstrong v. Exceptional Child Ctr.</u>, 135 S.Ct. 1378, 1389-90 (2015)) that dealt with Section 1396a(a)(30) (a provision far better suited to administrative remedies). Norwood's expressio unius argument falls flat on its face, considering how many times courts have found a Section 1983 remedy where none was stipulated in a statute.

## **Conclusion**

For the more than ample reasons set out in this opinion, this Court denies Norwood's Rule 12(b)(6) motion to dismiss, and Norwood is ordered to answer Operators' Complaint on or

before October 7, 2016. This action is set for a status hearing at 8:45 a.m. October 14 to discuss the future course of this litigation.

```
                                        _____
                                        Milton I. Shadur
                                        Senior United States District Judge
```

Date: September 19, 2016